Courtney Angeli, OSB No. 941765 *(admitted pro hac vice)*
Robin Bowerfind, OSB No. 035949
BUCHANAN ANGELI ALTSCHUL & SULLIVAN LLP
321 SW 4th Avenue, Suite 600
Portland, Oregon 97204
Telephone: (503) 974-5015
Facsimile: (971) 230-0337
E-mail: courtney@baaslaw.com

Marianne J. Gilmartin
STEVENS & LEE, P.C.
425 Spruce Street, Suite 300
Scranton, PA 18503
Telephone: (570) 969-5362
Facsimile: (570) 343-1892
E-mail: mjg@stevenslee.com

      Attorneys for Defendant JELD-WEN, inc.

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **MATTHEW J. MURRAY**, | |
| Plaintiff, | Case No. 11-CV-00895-JMM |
| v. | |
| **JELD-WEN, INC.**, | MEMORANDUM IN SUPPORT OF DEFENDANT JELD-WEN, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT |
| Defendant. | |

## I.    INTRODUCTION

Plaintiff Matthew Murray alleges that defendant JELD-WEN, inc.—his former employer—violated the federal Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2619, by failing to provide him with a comparable position upon return from leave, retaliating against him

for taking leave, and terminating his employment while he was on leave. JELD-WEN denies that it violated plaintiff's rights.

However, this Court need not even reach the question of liability because the record in this case is undisputed that *plaintiff has no claim for damages*. The law is clear that an employee who has no economic damages based on an alleged FMLA violation has no claim, as a matter of law. Therefore, at this early stage in this litigation, before further time and expense are spent on this matter, JELD-WEN moves for partial summary judgment on this issue.[1] Plaintiff's lack of proof of any form of damages recoverable under the FMLA clearly renders this lawsuit moot. JELD-WEN brings this motion for partial summary judgment in the interest of conserving judicial resources and resolving this dispute as early and expeditiously as possible.[2]

Plaintiff is a former maintenance employee of JELD-WEN DoorSystems, a JELD-WEN door manufacturing facility in Pottsville, Pennsylvania. Plaintiff took FMLA leave, which his health care provider certified was necessary for his medical condition, returned to work for one day, then resumed his leave. For economic reasons — it is well known that the building products industry has been under great stress since 2008 — plaintiff's position was eliminated, a fact he was informed about when he returned to work for the one day in the middle of his extended leave. However, his supervisor also told plaintiff that other positions were available at

---

[1] JELD-WEN provided plaintiff with all benefits to which he was entitled under the FMLA and its own policies, in no way interfered with his exercise of those rights, and did not retaliate against him. The facts are so compelling and the law so clear that, if this litigation continues, we anticipate filing a full summary judgment motion on the merits. JELD-WEN expressly reserves the right to file a summary judgment motion on the merits of liability, if necessary, at the close of discovery, in which JELD-WEN will demonstrate that it is undisputed that the elimination of plaintiff's position was based on legitimate business needs, and JELD-WEN's termination of his employment several months later was the result of its policies that apply to all employees, and that were properly applied to him.

[2] In the Amended Case Management Plan filed on September 28, 2011, JELD-WEN indicated that it planned to file this motion in Section 3.0, Early Motions.

Page 2 – MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR PARTIAL
    SUMMARY JUDGMENT

the plant, that he could apply for any of them, and in the meantime, the company would continue to pay him at his then-current rate for 30 days while he bid for those posted positions.

Rather than bid for an open position at the plant, however, plaintiff instead called in sick for the next two days while he sought documentation from his doctor that he required additional FMLA leave. JELD-WEN paid plaintiff for the three days he had returned to active employee status, then designated him as having returned to unpaid FMLA leave. Plaintiff never bid for another position, never returned to work again, and never took any steps to do so. Ultimately, plaintiff exhausted his twelve-week FMLA leave, and then remained on company-approved leave for an additional four months. He was then terminated pursuant to JELD-WEN's Six Month Neutral Termination Policy, which provides that an employee who is off work for an extended period of time will generally be terminated after six months of absence.[3]

Significantly, to this date plaintiff has not been medically able to return to work at any job—at JELD-WEN or anywhere else—and admits he has made no effort whatsoever to seek reemployment. These facts are undisputed, as is their legal impact.

The FMLA provides for *actual* economic damages, not for compensatory or punitive damages. A plaintiff only may recover under the FMLA the compensation he was denied as a result of a violation of his rights under the statute. JELD-WEN paid plaintiff for the days he was medically able to work following its alleged FMLA violations on June 7 and thereafter. He has no claim for damages because there is not one day during which plaintiff could have worked but

---

[3] Terminations under the Six-Month Neutral Termination Policy are not automatic for employees who are off work for health or medical reasons. Rather, the Company attempts to engage in an interactive process with the employee to determine if he or she is able to return to work and perform the essential functions of the job, with or without a reasonable accommodation. When, as here, an employee is unable to return to work, as certified by Mr. Murray's physician, the employee typically is terminated "in good standing" with an open invitation to apply for an open position in the future for which he or she is qualified.

Page 3 – MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR PARTIAL
        SUMMARY JUDGMENT

did not due to an alleged wrongful act by JELD-WEN. This means that even if JELD-WEN *had* violated plaintiff's FMLA rights—which it denies—plaintiff has not suffered any damage caused by the violation. Accordingly, for the reasons explained in detail below, JELD-WEN seeks an order from this Court that plaintiff's claim fails because he has no evidence to support a claim for damages, which is fatal to a claim under the FMLA.

## II. SUMMARY OF FACTS

A. <u>FMLA Leave.</u>

JELD-WEN hired plaintiff as a maintenance technician at its DoorSystems facility on April 23, 2007. Transcript of Deposition of Plaintiff Matthew Murray ("Pl. Tr.")14:8-10.[4] In this job, his duties were to repair mechanical equipment, address basic electrical problems, perform preventative maintenance, make plumbing repairs, complete maintenance logs, and maintain precise adjustments on calibrated systems. Pl. Tr. 32:17-33:6, Pl. Tr. Exhibit 2. Plaintiff worked on the night shift, which was the third of three shifts, reporting to production manager John Walter and maintenance supervisor Thomas Reich. Pl. Tr. 19:16-20:20, 59:18-21.

At his request, JELD-WEN granted plaintiff FMLA leave beginning on April 20, 2010, due to a documented mood disorder. Pl. Tr. 52:6-54:2, Pl. Tr. Exhibit 7 (FMLA paperwork dated April 2010). On June 3, 2010, plaintiff's doctor released him to return to work on June 6. Pl. Tr. 59:18-21.

B. <u>Plaintiff Returns to Work for One Day on June 6, 2010</u>.

As noted above, plaintiff returned to JELD-WEN for one workday, and worked the third shift on the evening of June 6, 2010. Pl. Tr. 59:18-29. On that day, production manager Charles Zigner notified him that the decision had been made during his absence to eliminate his third-

---

[4] Excerpts from the deposition of plaintiff Matthew Murray are provided as an attachment to the declaration of Courtney Angeli, filed herewith.

shift maintenance position.[5] Pl. Tr. 59:18-60:25. Mr. Zigner explained to plaintiff that the decision to eliminate his position had been made based on an earlier performance evaluation conducted prior to the commencement of his FMLA leave.[6] Tr. 68:23-69:5, 84:18-25. Mr. Zigner clearly informed plaintiff that his employment was not terminated and he would retain his maintenance technician pay rate for 30 days beginning June 7, 2010. Tr. 61:1-7. Mr. Walter explained that during this time JELD-WEN would place plaintiff in an open job for which he was qualified, but he did not have to remain in that position as he was able to bid on any open production position within the plant. Pl. Tr. 60:17-25. This message was reiterated by Mr. Walter in a subsequent meeting and in a typed explanation requested by plaintiff and given to him by Mr. Walter. Pl. Tr. 77:1-8; Pl. Tr. Exhibit 10 (Walter's memo given to Murray); Pl. Tr. 70:15-72:20. Plaintiff was paid for his work on the evening of June 6-7, 2010. Palmer Decl. ¶ 3, Exhibit A (Pay Statement).

C. <u>Plaintiff Resumes FMLA Leave After His One Day Return to Work and Has Not Been Able to Work Since that Date.</u>

On June 7, 2010, plaintiff called JELD-WEN and reported he was sick, stating that he would not return to work until after he had seen his doctor. Pl. Tr. 65:11-14 (Q. Then so my

---

[5] Mr. Zigner met with plaintiff at the end of his shift. Mr. Walter and Mr. Zigner worked on the first shift, arriving for work just as plaintiff was finishing his third shift. Pl. Tr. 59:18-25. While the decision to eliminate plaintiff's position had been made a few weeks before his June 6 return, plaintiff had not been notified of the decision because he had not indicated that he was ready to return to work at all. When he was ready to return to work in June, it then became necessary to inform him of his job elimination and reassignment. This was done at the earliest opportunity during his first shift back to work.

[6] While this motion does not reach the merits of plaintiff's claims under the FMLA, JELD-WEN notes that plaintiff was not insulated from this job elimination by his FMLA leave. The FMLA regulations clearly provide that "An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period." 29 CFR 825.216. In other words, JELD-WEN was not barred from eliminating a third-shift maintenance position simply because that position was filled by an employee who happened to be on FMLA leave at the time the decision was made.

understanding is you called off and said you couldn't work the following day or for the shift on June 7th, 2010. A. Correct.). On June 10, 2010, plaintiff's physician recommended in writing that plaintiff be returned to FMLA leave status, beginning on June 10.[7] Pl. Tr. 66:1-8, Pl. Tr. Exhibit 8; Pl. Tr. 69:22-70:14. Plaintiff has not been able to return to any type of work, at JELD-WEN or any other employer, since the morning of June 7. Plaintiff clearly admits that he has not been released to return to work since he left work on the morning of June 7.

> Q. I understand you're currently unable to work, that you're not medically released to return to work; is that fair to say?
>
> A. That's fair to say.
>
> Q. And you haven't been released to return to work since June 7, 2010, correct?
>
> A. Correct . . . .
>
> Q. And do you have any idea of when you might be able to return to work?
>
> A. No.

Pl. Tr. 63:8-14, 64:8-10; Pl. Tr. 86:15-87:25 (admitting that, when JELD-WEN inquired in October about his ability to return to work, on November 22, 2010, Dr. Lieb "did not predict that

---

[7] As noted above, ultimately JELD-WEN administratively separated plaintiff from employment on November 17, 2010, under the Company's "six month neutral leave" termination policy, some four months after his FMLA leave expired. Pl. Tr. 88:1-23. After plaintiff had been on leave for six months as of October 2010, JELD-WEN solicited information from plaintiff's physician regarding his ability to return to work and was informed that there was no date certain—nor even any prediction by his health care provider—as to when he could return to work, if at all. Tr. 86:14-87:25. Because there is no dispute that plaintiff has never been subsequently released to return to work since June 7, 2010, the details of his ultimate separation from employment are not relevant to this motion and are not addressed in this memorandum. Plaintiff's inability to return to work after June 6 is determinative of damages. As explained in the "Legal Analysis" section below, no dispute on any facts retaliating to actions by JELD-WEN with respect to plaintiff's FMLA leave after that date change his entitlement to damages—even blatant violations of the FMLA would not create recoverable monetary loss where none exists.

you would be available to return to work, correct? A. Correct.") He also states that he has made no effort to find employment since his final day of work at JELD-WEN:

> Q. Have you had any employment whatsoever since June 6th, 2010?
>
> A. No.
>
> Q. Have you made any attempts to find employment?
>
> A. No

Pl Tr. 64:11-16.

### III. LEGAL ANALYSIS

Damages under the FMLA are based on a plaintiff's *actual* economic damages. 29 U.S.C. § 2617(a)(1)(A)(i); *Coleman v. Potomac Electric Power Co.,* 281 F.Supp. 2d 250, 254 (D.D.C. 2003) ("Recovery under FMLA is 'unambiguously limited to actual monetary losses.'…Other kinds of damages - punitive damages, nominal damages, or damages for emotional distress - are not recoverable.") Plaintiff cannot show that he has suffered economic damages, which eliminates *any* theory of recovery.

Plaintiff claims that JELD-WEN violated the FMLA on or after June 6 when the Company notified him that his maintenance position was eliminated on June 7, and/or when he was terminated. It cannot be disputed that plaintiff suffered no economic loss as a direct result of any violation of the FMLA by JELD-WEN. That is, he worked only one shift—on the evening of June 6 to 7—called in sick for his next shift and was thus unable to work, then resumed his FMLA leave on June 10. JELD-WEN paid plaintiff for his work on June 7, as well as for the two subsequent days for which he called in sick that week. Palmer Decl. ¶ 3, Attachment A. *Plaintiff has not been released to return to work since he left work on the morning of June 7:*

> Q. And you haven't been released to return to work since June 7, 2010, correct?
>
> A. Correct…..
>
> Q. And do you have any idea of when you might be able to return to work?
>
> A. No.

Pl. Tr. 63:12-14, 64:8-10; Pl. Tr. 86:15-87:25 (admitting that when JELD-WEN inquired in October about his ability to return to work, on November 22, 2010, Dr. Lieb "did not predict that you would be available to return to work, correct? A. Correct.") Plaintiff also admits that he has made no effort to find employment, presumably because he has never been medically released to return to work:

> Q. Have you had any employment whatsoever since June 6th, 2010?
>
> A. No.
>
> Q. Have you made any attempts to find employment?
>
> A. No

Pl Tr. 64:11-16.

Since plaintiff has not been able—indeed has not even attempted—to return to work since June 7, 2010, he has no basis for any claim that he was prejudiced, and therefore suffered any monetary loss, by JELD-WEN's elimination of his position and/or his alleged termination. *See Franzen v. Ellis Corp.*, 543 F.3d 420 (7th Cir 2008) (finding that employer violated the FMLA when it terminated employee after receiving a doctor's note, but holding that "we conclude that Mr. Franzen failed to prove that he was prejudiced by Ellis' violation of the FMLA. Overwhelming evidence in the record shows that after the accident, he was unable and/or unwilling to return to work. Mr. Franzen made no effort to rebut Ellis' overwhelming evidence

that he had failed to mitigate his damages. Accordingly, he cannot succeed on his FMLA claim.")

Because plaintiff has no evidence of actual monetary loss directly caused by a violation of his FMLA rights, he has no basis for a claim of damages under the FMLA. *Lapham v. Vanguard Cellular Systems, Inc.*, 102 F.Supp.2d 266, 270 (M.D. Pa. 2000) (dismissing plaintiff's FMLA claim because she suffered no wage or other monetary loss and stating "she cannot obtain relief under the FMLA and her claim must be dismissed"), s*ee also Walker v. UPS,* 240 F.3d 1268, 1278 (10th Cir. 2003) (finding no grounds for relief under the FMLA where the employee suffered no monetary losses as a result of the alleged violation of FMLA).

Notably, nominal damages are not an available remedy under the FMLA. *Oby v. Baton Rouge Marriott*, 321 F.Supp.2d, 772, 788 (M.D. La. 2004) ("It is clear that nominal damages are not available under the FMLA because the statutory language of the FMLA specifically limits recovery to actual monetary losses.") The FMLA does not provide for recovery for emotional distress or pain and suffering. *Lloyd v. Wyoming Valley Health Care Sys*., 994 F.Supp. 288, 291 (M.D. Pa. 1998). Punitive damages cannot be recovered under the FMLA. *Zawadowicz v. CVS Corp.*, 99 F. Supp.2d 518, 534 (D.N.J. 2000) (noting that nothing in the FMLA damages provision, 29 U.S.C. § 2617, authorizes an award of punitive damages).[8]

Additionally, an award of attorneys' fees is not available if plaintiff cannot prove any damages, even if he is able to show a violation of the FMLA. According to 29 U.S.C. §2617(a)(3), an actual "judgment" in favor of the plaintiff is a necessary triggering event for an award of attorneys' fees under the FMLA. *Franzen,* 543 F.3d 420 (7th Cir. 2008) ("Although the

---

[8] The FMLA does provide for liquidated damages which operate to double economic damages in the case of a willful violation of the statute. There is no evidence of a willful violation of the FMLA. And, even if JELD-WEN *had* committed a willful violation, the doubling of zero economic damages is still zero.

jury found that Ellis' termination of Mr. Franzen's employment had been in violation of the FMLA, the district court also found that Mr. Franzen had failed to prove that he was entitled to any damages. Accordingly, the court dismissed the case and entered judgment in favor of Ellis. Under the plain wording of section 2617, then, Mr. Franzen is not entitled to an award of attorneys' fees because no 'judgment' was 'awarded to the plaintiff.'")

JELD-WEN respectfully requests that this Court grant summary judgment as to plaintiff's claim for damages. *See Lapham*, 102 F. Supp.2d at 270 (acknowledging that the FMLA "simply leaves no room for recovery when an employee does not sustain economic loss during the period of his or her employment").

Dated: January 18, 2012        BUCHANAN ANGELI ALTSCHUL & SULLIVAN LLP


s/ Courtney Angeli
Courtney Angeli, OSB No. 941765
Robin Bowerfind, OSB No. 035949
BUCHANAN ANGELI ALTSCHUL & SULLIVAN LLP
321 SW 4th Avenue, Suite 600
Portland, Oregon 97204
503-974-5015
971-230-0337 (fax)
E-mail: courtney@baaslaw.com

Marianne J. Gilmartin
STEVENS & LEE, P.C.
425 Spruce Street, Suite 300
Scranton, PA 18503
Telephone: (570) 969-5362
Facsimile: (570) 343-1892
E-mail: mjg@stevenslee.com

# CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT on the following named person on the date indicated below by:

- ☐ Mailing with postage prepaid
- ☐ Hand delivery
- ☐ Facsimile transmission
- X CM/ECF filing
- ☐ Electronic mailing

Theodore R. Laputka, Jr.
19 East Broad Street
Hazleton, PA 18201
(570) 459-0800
*salmon@hazleton.net*

Attorneys for Plaintiff

Dated: January 18, 2012

BUCHANAN ANGELI ALTSCHUL & SULLIVAN LLP

  s/ Courtney Angeli
Courtney Angeli, OSB No. 941765
Robin Bowerfind, OSB No. 035949
BUCHANAN ANGELI ALTSCHUL & SULLIVAN LLP
321 SW 4th Avenue, Suite 600
Portland, Oregon 97204
503-974-5015
971-230-0337 (fax)
E-mail: courtney@baaslaw.com

Marianne J. Gilmartin
STEVENS & LEE, P.C.
425 Spruce Street, Suite 300
Scranton, PA 18503
Telephone: (570) 969-5362
Facsimile: (570) 343-1892
E-mail: mjg@stevenslee.com

Page 1 – CERTIFICATE OF SERVICE