**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

**MATTHEW J. MURRAY**,

               Plaintiff,                              Case No. 11-CV-00895-MEM

        v.                                     (Mannion, M.J.)

**JELD-WEN, INC.**,

               Defendant.

**DEFENDANT JELD-WEN, INC.'S MEMORANDUM IN SUPPORT OF ITS**
**MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

                                                                           **Page**

I.     INTRODUCTION ................................................................1

II.    PROCEDURAL HISTORY ................................................3

III.   SUMMARY OF FACTS ...................................................4

       A.     FMLA Leave ................................................4

       B.     Plaintiff Was Selected for Job Elimination While on Leave ...............6

       C.     Plaintiff Returns to Work for One Day on June 6, 2010 and

            Learns of His Job Elimination.................................................8

       D.     Plaintiff Resumes FMLA Leave After His One Day Return

            to Work and Has Not Been Able to Work Since that Date...................9

       E.     Plaintiff Did Not Apply for Any Open Position after

            June 7, 2010........................................................11

       F.     After Over Six Months of Leave, JELD-WEN Contacts Plaintiff

            To Determine His Intentions With Regard To Return To Work…......13

       G.    On November 17, 2010, Four Months After his FMLA Leave

            Expired, Plaintiff Was Terminated Pursuant to the Six-Month

            Neutral Termination Policy Because His Physician Stated He Would

            Not Be Able To Return To Work in the Foreseeable Future………..15

IV. LEGAL ANALYSIS ........................................................16

A.     Summary Judgment Standard.................................................................16

B.     Plaintiff Was Terminated Administratively Months After

his FMLA Leave Expired Because He Could Not Return

to Work, Not Because He Took FMLA Leave ...................................17

1.     FMLA Retaliation – the Legal Standard ………..................…17

2.     Plaintiff Cannot Establish a Prima Facie Case

Because He Cannot Show He Suffered An Adverse

Employment Action…………………………………….……18

3.     Plaintiff Cannot Establish a Prima Facie Case Because

He Cannot Show a Causal Connection Between his

Termination and His FMLA Leave ..........................................20

4.     JELD-WEN has Demonstrated a Legitimate Non-

Discriminatory Reason for Terminating Plaintiff's

Employment and Plaintiff Cannot Show Pretext.....................21

a.     JELD-WEN Terminated Plaintiff Pursuant to its Six-

Month Neutral Termination Policy…………………....21

b.     Plaintiff Has No Evidence of Pretext………………....22

C.   Plaintiff Cannot Show That JELD-WEN Interfered with his

Rights Under the FMLA When His Job Was Eliminated and He

Was Reassigned During His FMLA Leave........................................24

1.   Prima Facie Case of Interference with the FMLA…………..24

2.   Plaintiff Was Not Insulated From Job Elimination

By His FMLA Leave ................................................................25

D.   Plaintiff Cannot Show That His Employment Was

Terminated While He Was on FMLA Leave ………………...............27

V. CONCULSION ...................................................................................28

# TABLE OF AUTHORITIES

## Cases

*Abramson v. William Paterson Coll. Of N.J.*, 260 F.3d 265

 (3d Cir. 2001) ........................................................................21

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505,

91 L.Ed.2d 202 (1986) ............................................................16

*Atchison v. Sears*, 666 F.Supp.2d 477 (E.D. Penn. 2009) ......................................18

*Big Apple BMW, Inc. v. BMW of N. Am. Inc.,* 974 F.2d 1358

(3d Cir. 1992) ..........................................................................17

*Budhun v. Reading Hospital and Medical Center*, 2011 WL 6002024

(E.D. Penn. November 30, 2011 slip copy) ............................................19

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265

(1986) ....................................................................................16

*Callison v. City of Philadelphia*, 430 F.3d 117 (3d Cir. 2005) .............................26

*Compton v. Nat'l Leage of Prof'l Baseball Clubs*, 995 F. Supp. 554

(E.D. Pa. 1998) ........................................................................17

*Coppa v. American Society for Testing Materials*, 2005 WL 1124180

(E.D. Penn 2005) ......................................................................22

*Dogmanits v. Capital Blue Cross*, 413 F.Supp.2d 452 (E.D. Penn. 2005) .............22

*Gibson v. Lafayette Manor, Inc.*, 2007 WL 951473 (W.D. Penn. 2007) ...............19

*Hines v. Consol. Rail Corp.,* 926 F.2d 262 (3rd Cir. 1991)......................................16

*Mascioli v. Arby's Rest. Group, Inc.,* 610 F.Supp.2d 419 (W.D. Pa. 2009) ...........26

*Pellegrino v. Communications Workers of America, AFL-CIO, CLC*,

17 Wage & Hour Cas.2d (BNA) 1169 (Slip Copy W.D. Penn. 2011)...................27

*Sommer v. The Vanguard Group*, 461 F.3d 397 (3d Cir. 2006)..............................25

*Tziatzios v. United States*, 164 F.R.D. 410 (E.D. Pa. 1996) ...................................17

*Yandrisevitz v. H.T. Lyons, Inc.*, 2009 WL 2195139 (E.D. Pa. 2009)....................26

## Rules and Statutes

29 C.F.R. 825.216 .................................................................................................26

29 C.F.R. 825.313(d) ...........................................................................................28

Fed.R.Civ.P. 56(e) .................................................................................................17

## I.    INTRODUCTION

Plaintiff Matthew Murray alleges that defendant JELD-WEN, inc.—his former employer—violated the federal Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2619, by failing to provide him with a comparable position upon return from leave (Count One), terminating his employment while he was on leave (Count Two), and retaliating against him for taking leave (Count Three).  JELD-WEN denies that it violated plaintiff's rights.

JELD-WEN provided plaintiff with all benefits to which he was entitled under the FMLA and its own policies, in no way interfered with his exercise of those rights, and did not retaliate against him. It is undisputed that the elimination of plaintiff's position was based on legitimate business needs, that plaintiff was selected based upon objective criteria and that he would have been selected whether he was on leave or not.  Furthermore, JELD-WEN's termination of his employment, which was several months later and after his FMLA leave had long since expired, was the result of its policies that apply to all employees, and that were properly applied to him.

Plaintiff is a former maintenance employee of JELD-WEN DoorSystems, a JELD-WEN door manufacturing facility in Pottsville, Pennsylvania.  Plaintiff took FMLA leave, which his health care provider certified was necessary for his

Page 1 – MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR
            SUMMARY JUDGMENT

medical condition, returned to work for one day, then resumed his leave.  While he was on leave, plaintiff's position was eliminated, a fact he was informed about when he returned to work for the one day in the middle of his extended leave. However, his supervisor also told plaintiff that other positions would be available at the plant for which he was qualified, that he could apply for any of them, and in the meantime, the company would continue to pay him at his then-current rate for 30 days while he bid for those posted positions.

Rather than bidding for an open position at the plant, however, plaintiff instead called in sick for the next two days while he sought documentation from his doctor that he required additional FMLA leave.  JELD-WEN paid plaintiff for the three days he had returned to active employee status, then designated him as having returned to unpaid FMLA leave.  Plaintiff never bid for another position, never returned to work again, and never took any steps to do so. Ultimately, plaintiff exhausted his twelve-week FMLA leave, and then remained on company-approved leave for an additional four months. He was then terminated pursuant to JELD-WEN's Six-Month Neutral Termination Policy, which provides that an employee who is off work for an extended period of time will generally be terminated after six months of absence when the employee does not anticipate an ability to return to work in the foreseeable future.

Page 2 – MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Significantly, to this date, plaintiff has not been medically able to return to work at any job—at JELD-WEN or anywhere else—and admits he has made no effort whatsoever to seek reemployment. These facts are undisputed, as is their legal impact.

Accordingly, for the reasons explained in detail below as well as for the reasons explained in JELWEN's Motion for Partial Summary Judgment currently pending before this Court, JELD-WEN seeks summary judgment as to each of plaintiff's claims under the FMLA.

## II.   PROCEDURAL HISTORY

Plaintiff filed his Complaint in this matter on May 11, 2011. Defendant answered on June 21, 2011. The parties have completed discovery.  On January 18, 2012, defendants filed a preliminary partial motion for summary judgment on the issue of damages, supplemented on February 8, 2012 by a concise statement of facts.  Plaintiff submitted an Opposition to that motion on February 7, 2012 and defendant replied on February 21, 2012.  Plaintiff submitted an answer to defendant's Concise Statement on February 29, 2012, which defendant moved to strike on March 7, 2012 (and again moved to strike by amended motion on April 6, 2012).  Plaintiff did not oppose the Amended Motion to Strike.  Defendant's Motion for Partial Summary Judgment is currently pending before this Court. On

Page 3 – MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

April 30, 2012, both defendant and plaintiff filed Motions for Summary Judgment.

This memo is the brief in support of defendant's Motion for Summary Judgment.

## III.   SUMMARY OF FACTS

### A.   FMLA Leave

JELD-WEN hired plaintiff as a maintenance technician at its DoorSystems

facility on April 23, 2007.  Transcript of Deposition of Plaintiff Matthew Murray

("Pl. Tr.")14:8-10.[1]  In this job, his duties were to repair mechanical equipment,

address basic electrical problems, perform preventative maintenance, make

plumbing repairs, complete maintenance logs, and maintain precise adjustments on

calibrated systems. Pl. Tr. 32:17-33:6, Pl. Tr. Exhibit 2.  Plaintiff worked on the

night shift, which was the third shift, reporting to production managers John

Walter and Charlie Zigner, and maintenance supervisor Thomas Reich.  Pl. Tr.

19:16-20:20, 34:4-14; 59:18-21.

In late March and early April of 2010, Tom Reich completed a performance

evaluation for each maintenance technician. Plaintiff's overall score was 2 out of 5,

or "minimal performance." Transcript of the Deposition of Tom Reich ("Reich

---

[1]      Excerpts from the deposition of plaintiff Matthew Murray are provided as an attachment to the Concise Statement of Facts in Support of JELD-WEN, inc's Motion for Summary Judgment.

Tr.") 8:24-9:17[2]; Pl. Tr. 44:16-45:7; Pl. Tr. Exhibit 5.  Mr. Reich noted that while

plaintiff's fabrication skills were good, he needed to improve in electrical and

mechanical maintenance. Pl. Tr. Exhibit 5; Reich Tr. 15:3-16:8[3].

At his request, JELD-WEN granted plaintiff an extended FMLA leave,

beginning on April 20, 2010, due to a documented mood disorder.[4] Pl. Tr. 52:6-

54:2, Pl. Tr. Exhibit 7. He remained on leave for six weeks until, on June 3, 2010,

plaintiff's doctor released him to return to work on June 6.  Pl. Tr. 59:18-21.

Plaintiff admits that neither Mr. Reich, Mr. Walter, Mr. Zigner nor Mr. Caine ever

made a negative comment to him about taking FMLA leave or expressed any

---

[2]      Excerpts from the deposition of Maintenance Supervisor Tom Reich are
provided as an attachment to the Concise Statement of Facts in Support of JELD-
WEN, inc's Motion for Summary Judgment.

[3]      When he drafted performance evaluations for those employees in plaintiff's
position, Mr. Reich happened to complete Mr. Murray's evaluation first.  Mr.
Reich printed the form off the JELD-WEN system and filled it out by hand.  While
he was in the process of filling it out, Mr. Walter happened to see him working on
it and told him that the JELD-WEN system he retrieved the form from actually
allowed the user to fill out the form on line, and that it was not necessary to print it
out and complete it manually.  Walter Tr. 11:25-12:9. When Mr. Reich completed
the remaining evaluations for the maintenance technicians, he completed the forms
on line as suggested by Mr. Walter.  Walter Decl. ¶ 4, Exh. A

[4]      JELD-WEN's report of use of FMLA time reflects two other occasions
when plaintiff used FMLA leave, once for a few days in October 2009 and again
on April 5, 2010.  Pl. Tr. 38:15-25; Palmer Decl. ¶ 5, Exhibit B.  Those absences
were designated as FMLA absences and plaintiff returned to his previous position
after each brief absence.  Palmer Decl. ¶ 5.  Plaintiff does not identify these
absences in this Complaint as the basis for his claims but instead alleges violation
of the FMLA with respect to his FMLA leave commencing on April 22, 2010.
Complaint ¶¶ 4-8.

Page 5 – MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR
         SUMMARY JUDGMENT

antagonism towards him whatsoever regarding his leave—and that Mr. Reich encouraged him to take as much time as he needed. Pl. Tr. 17:23-18:25, 19:10-15, 22:21-23, 22:24-24:5, 27:13-28:7, 34:4-14.

### B.   Plaintiff Was Selected for Job Elimination While on Leave.

In late April or early May of 2010, Mr. Caine decided that the maintenance department was overstaffed and suggested to the Production Managers, Mr. Walter and Mr. Zigner, that they consider eliminating one position. Transcript of the Deposition of John Caine ("Caine Tr.") 19:19-21:23[5]; Transcript of the Deposition of John Walter ("Walter Tr.") 8:15-9:18[6]; Transcript of the Deposition of Charlie Zigner ("Zigner Tr.") 7:3-8:5.[7]   The Pottsville facility had been open for approximately two years and the process of getting the new equipment up and running, which involved a large amount of fabrication and de-bugging, was completed. Caine Tr. 59:14-60:24; Pl. Tr. 16:17-17:3.  The maintenance needs were becoming less focused on fabrication and reactive maintenance and more

---

[5]   Excerpts from the deposition of General Manager John Caine, taken on January 24, 2012, are provided as an attachment to the Concise Statement of Facts in Support of JELD-WEN, inc's Motion for Summary Judgment.
[6]   Excerpts from the deposition of Production Manager John Walter, taken on January 24, 2012, are provided as an attachment to the Concise Statement of Facts in Support of JELD-WEN, inc's Motion for Summary Judgment.
[7]   Excerpts from the deposition of Production Manager Charlie Zigner, taken on January 24, 2012,  are provided as an attachment to the Concise Statement of Facts in Support of JELD-WEN, inc's Motion for Summary Judgment.

focused on preventative measures. *Id*. Therefore, it seemed to him that the facility could cut costs by operating with fewer maintenance labor hours. *Id*.

Mr. Walter and Mr. Zigner agreed that the department could operate with fewer maintenance technicians, so Mr. Caine instructed them to identify the lowest performing technician based on recent performance reviews. Caine Tr. 60:2-24; Walter 8:15-9:18; Zigner Tr. 7:3-8:24.  In May 2010, Mr. Walter and Mr. Zigner reviewed the performance appraisals conducted by Mr. Reich earlier that Spring to determine whose job to eliminate. Walter Tr.8:15-9:18; Zigner Tr. 7:3-8:24, 10:2-21.  The eight maintenance workers at the Pottsville facility were plaintiff, Daniel Link, Bruce Teats, John Karycki, Jerry Straub, Jeff McAndrew, Bruce Pascavage and Larry Meier. Declaration of John Walter ("Walter Decl.") ¶ 4. Plaintiff's rating on his performance review from March 2010 was the lowest of any of the maintenance workers. Walter Decl. ¶ 4-6, Exhibit A; Pl. Tr. Exhibit 5.  In March 2010, which was the evaluation period relevant to the layoff decision, plaintiff received a rating of 2 ("minimum performance") while the other maintenance technicians received higher scores. *Id*.

Plaintiff was selected for job elimination because his performance review rating was the lowest of the eight maintenance technicians. Zigner Tr. 10:2-21; Walter Tr. 8:15-9:18; Caine Tr. 23:19-24:4.  The fact that plaintiff was on FMLA

leave was in no way a factor in the selection of plaintiff. Walter Decl. ¶ 6.  FMLA leave was routinely taken by JELD-WEN employees.  Declaration of Jennifer Palmer ("Palmer Decl.") ¶ 4; Walter Decl. ¶ 7.  In fact, three of the other maintenance workers, Mr. Teats, Mr. Karycki, and Mr. Meier, had each taken FMLA leave previously and their positions were not eliminated. Palmer Decl. ¶ 7; Walter Decl. ¶ 7.  Indeed, Mr. Meier took more than fourteen weeks of FMLA leave in 2009.[8] Palmer Decl. ¶ 7.  Mr. Meier received a higher performance review rating than Mr. Murray in the spring of 2010 and his job was not eliminated. Walter Decl. ¶ 4.

C.     **Plaintiff Returns to Work for One Day on June 6, 2010 and Learns of His Position Elimination.**

As noted above, plaintiff returned to JELD-WEN for one workday, and worked the third shift on the evening of June 6, 2010. Pl. Tr. 59:18-25.  During his shift, production manager Charles Zigner notified him that the decision had been made during his absence to eliminate his third-shift maintenance position.[9] Pl. Tr.

---

[8]     Mr. Meier took FMLA leave from January 12 to February 3, 2009 and again from April 20 to July 6, 2009 Palmer Decl ¶ 7.

[9]     Mr. Zigner met with plaintiff at the end of his shift.  Mr. Walter and Mr. Zigner worked on the first shift, arriving for work just as plaintiff was finishing his third shift. Pl. Tr. 59:18-25.  While the decision to eliminate plaintiff's position had been made a few weeks before his June 6 return, plaintiff had not been notified of

59:18-60:25.  Mr. Zigner explained to plaintiff that the decision to eliminate his position had been made based on an earlier performance evaluation conducted prior to the commencement of his FMLA leave. Pl. Tr. 68:23-69:5, 84:18-25.  Mr. Zigner clearly informed plaintiff that his employment was not terminated and he would retain his maintenance technician pay rate for 30 days beginning June 7, 2010. Pl. Tr. 61:1-7.  Mr. Walter again explained the implications of the job elimination in a subsequent meeting with plaintiff, on June 9.  Pl. Tr. 70:22-72:2.  Mr. Walter also explained that during this time JELD-WEN would place plaintiff in an open job for which he was qualified, but he did not have to remain in that position as he was able to bid on any open production position within the plant. Pl. Tr. 60:17-25; Caine Tr. 37:20-38:23, 58:6-59:4.  This message was reiterated yet again by Mr. Walter in a typed explanation requested by plaintiff and given to him by Mr. Walter in a subsequent meeting on June 14, 2010. Pl. Tr. 77:1-8; Pl. Tr. Exhibit 10; Pl. Tr. 70:15-72:20.  Plaintiff was paid for his work on the evening of June 6-7, 2010.  Palmer Decl. ¶ 3, Exhibit A (Pay Statement).

### D.  Plaintiff Resumes FMLA Leave After His One Day Return to Work and Has Not Been Able to Work Since that Date

the decision because he had not indicated that he was ready to return to work at all. When he was ready to return to work in June, it then became necessary to inform him of his job elimination and reassignment.  This was done at the earliest opportunity during his first shift back to work.  Zigner Tr. 10:22-11:3.

Page 9 – MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

On June 7, 2010, plaintiff called JELD-WEN and reported he was sick, stating that he would not return to work until after he had seen his doctor. Pl. Tr. 65:11-14 (Q. "Then so my understanding is you called off and said you couldn't work the following day or for the shift on June 7th, 2010.  A. Correct.").  On June 10, 2010, plaintiff's physician recommended in writing that plaintiff be returned to FMLA leave status, beginning on June 10.  Pl. Tr. 66:1-8, Pl. Tr. Exhibit 8; Pl. Tr. 69:22-70:14.  Since the morning of June 7, 2010, plaintiff has not been able to return to any type of work, at JELD-WEN or with any other employer.  Plaintiff clearly admits that he has not been released to return to work since he left work on the morning of June 7.

> Q.    I understand you're currently unable to work, that you're not medically released to return to work; is that fair to say?
>
> A.    That's fair to say.
>
> Q.    And you haven't been released to return to work since June 7, 2010, correct?
>
> A.    Correct . . . .
>
> Q.    And do you have any idea of when you might be able to return to work?
>
> A.    No.

Pl. Tr. 63:8-14, 64:8-10; Pl. Tr. 86:15-87:25 (admitting that, when JELD-WEN inquired in October about his ability to return to work, on November 2, 2010, Dr.

Lieb "did not predict that you would be available to return to work, correct? A.
Correct.")  He also states that he has made no effort to find employment since his
final day of work at JELD-WEN:

> Q.    Have you had any employment whatsoever since June 6th,
>        2010?
>
> A.    No.
>
> Q.    Have you made any attempts to find employment?
>
> A.    No.

Pl Tr. 64:11-16.

### E.    Plaintiff Did Not Apply for Any Open Position after June 7, 2010

In the days and months after plaintiff was informed that his job was
eliminated on June 7, 2010, plaintiff cannot dispute that several positions became
open at JELD-WEN's Pottsville facility and admits that he did not apply for any of
them. Pl. Tr. 61:8-23, 64:11-16, 74:20-76:1.

In just the six weeks after the elimination of plaintiff's job, from June 7,
2010 though the end of July, seven positions were open for bidding. Walter Tr.
22:22-24:1 (two jobs posted on June 21,2010); 24:2-8 (one job posted on June 28,
2010); 24:9-17 (two jobs posted on July 12, 2010); 24:18-25:5 (three jobs posted
on July 22, 2010); Declaration of Blair Fillmore ("Fillmore Decl.") ¶ 4, Exhibit A.

Each of those positions was posted and plaintiff could have applied for any one of them. Pl. Tr. 75:4-21; Walter Tr. 18:5-15.

In July 2010, JELD-WEN hired a preventative maintenance technician. Caine Tr. 43:13-44:3.  The need for a preventative maintenance position arose in part because JELD-WEN was about to close an operation in Edison, New Jersey and was anticipating the transfer of a large volume of production to Pottsville. Crane Tr. 59:14-60:1, 63:22-64:22.  This was a different kind of maintenance position than the one plaintiff had held, but he could have bid for this job had he been interested in it and able to return to work.  Caine Tr. at 28-29:23; 46:10-47:18. The person hired for this position, Matt Malinowski, had also recently used FMLA leave, followed by an extended unpaid leave.  Mr. Malinowski began his FMLA leave on January 28, 2009 and did not return until July 28, 2009. Zigner Tr. 16:4-16; Palmer Decl. ¶ 8. After six months of leave, Mr. Caine wrote Mr. Malinowski a letter informing him that he was subject to termination under the Company's Six-Month Neutral Termination Policy and asking him to provide information about his ability to return to work. Zigner Tr. 15:24-16:16.  Mr. Malinowski informed Mr. Zigner that he was able to return to work and was immediately reinstated. Zigner Tr. 16:4-16.  Less than a year after his return from

that leave, he successfully bid for this preventative maintenance position which he

started on July 19, 2010. *Id.*

Plaintiff admits that he made no effort at all to seek employment. Pl. Tr.

64:11-16.  Indeed, he only recalls looking to see what jobs were open for bid at

JELD-WEN on one day in June:

> Q.    And did you understand that you still had the option to bid on a
>       position? You knew that was open to you under JELD-WEN
>       process, correct?
> A.    The opportunity to bid on a job is always there; however, there
>       were no jobs up for bid.
> Q.    There were no positions available for bid at the time that you
>       had the discussion with Mr. Walter on June 14th?
> A.     Exactly.
> Q.    You had checked the board and you saw nothing there?
> A.    I saw nothing.
> Q.    Isn't that unusual for there not to be any positions?
> A.    No, it's not unusual.
> Q.    Did you ever check the board after June 14th?
> A.    No.

Pl. Tr. 75:4-21.  Plaintiff does not deny that he never bid on any position after he

was notified of the elimination of this job on June 7, 2010. Pl. Tr. 75:4-76:1;

81:12-82:2.

> **F.    After Over Six Months of Leave, JELD-WEN Contacts Plaintiff
>        To Determine His Intentions With Regard To Return To Work.**

Plaintiff's twelve week entitlement of FMLA leave expired on July 8, 2010.

Palmer Decl. ¶ 6.  He was transitioned to an unpaid leave of absence and remained

on leave for another three months. *Id*. In October 2010, JELD-WEN's Six-Month

Neutral Termination Policy triggered review of his leave status and ability to return

to work. Palmer Decl. ¶ 9, Exhibit D.  A separation from employment under the

Six-Month Neutral Termination Policy is not automatic for employees who are off

work for health or medical reasons. Palmer Decl. ¶ 9.  Rather, the Company

attempts to engage in an interactive process with the employee to determine if he

or she is able to return to work and perform the essential functions of the job, with

or without a reasonable accommodation.  When, as here, an employee is unable to

return to work, as certified by plaintiff's physician, the employee typically is

terminated "in good standing" with an open invitation to apply for an open position

in the future for which he or she is qualified. Palmer Decl. ¶ 9.

Pursuant to JELD-WEN policy, after a total of six months out of work since

his FMLA leave began on April 20, 2010, Mr. Caine wrote a letter to plaintiff on

October 20, 2010, informing him of his potential termination under company

policy but letting him know that he may be eligible for an extension of the six

months depending upon the progress of his recovery and the anticipated duration

of his leave. Pl. Tr. 85:12-86:7; Pl. Tr. Exhibit 12.  Mr. Caine requested medical

documentation of plaintiff's need for additional leave and intention to return to

work.  *Id*.  On November 2, 2010, plaintiff provided a letter from his doctor,

Pamela Lieb, in which Dr. Lieb said that she did not anticipate any improvement in

plaintiff's condition and that that there was no date certain—nor even any

prediction—as to when he could return to work, if at all.  Pl. Tr. 86:14-87:25.

> Q.    By this letter Dr. Lieb did not indicate that you were going to
>       be able to return to work any time soon; is that correct? She
>       provided more information about your medical situation, but
>       she did not predict that you would be available to return to
>       work, correct?
> A.    Correct.

Pl. Tr. 87:19-25.

> **G.    On November 17, 2010, Four Months After his FMLA Leave
>        Expired, Plaintiff Was Terminated Pursuant to the Six-Month
>        Neutral Termination Policy Because His Physician Stated He
>        Would Not Be Able To Return To Work in the Foreseeable
>        Future**

Ultimately, JELD-WEN administratively separated plaintiff from

employment on November 17, 2010, under the Company's Six-Month Neutral

Termination Policy, after seven months of leave and four months after his FMLA

leave expired. Pl. Tr. 88:1-23.  In the letter informing plaintiff of his termination,

Mr. Caine explained that he was still in good standing and could apply for rehire

whenever he was able to return to work. Pl. Tr. Exhibit 13.

> Q.    And after Dr. Lieb's letter had been provided by both you and
>       her on or about November 2nd, 2010, did you receive this
>       document that we've just marked as Exhibit 13, which is a letter
>       dated November 10, 2010, to you from John Caine?
> A.    Yes.

Page 15 – MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR
         SUMMARY JUDGMENT

> Q.   And this indicated that you were being --that your employment was being terminated because you continued to be restricted from your job and wouldn't be able to return to work within six months or in some reasonable time thereafter, correct?
>
> A.   I suppose.
>
> Q.   And he indicated in the third paragraph here that when your employment was terminated you were employed in good standing and thus were not designated as ineligible for rehire. Have you subsequently applied for any position at the Pottsville location of Jeld-Wen?
>
> A.   No, I did not.

Pl. Tr. 88:5-23.

## IV.   LEGAL ANALYSIS

### A.   Summary Judgment Standard

Summary judgment is proper "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *See Hines v. Consol. Rail Corp.,* 926 F.2d 262, 267 (3rd Cir. 1991).  The Court asks "whether the evidence presents a sufficient disagreement to require submission to the jury or whether ... one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  The moving party has the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  "A fact is material if it could affect the outcome of the suit

Page 16 – MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

after applying the substantive law. Further, a dispute over a material fact must be 'genuine,' i.e., the evidence must be such 'that a reasonable jury could return a verdict in favor of the non-moving party.'" *Compton v. Nat'l Leage of Prof'l Baseball Clubs*, 995 F. Supp. 554, 561 n 14 (E.D. Pa. 1998).

Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.  Once the moving party has produced evidence in support of summary judgment, the non-moving party must go beyond the allegations set forth in its pleadings and counter with evidence that presents "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see also Big Apple BMW, Inc. v. BMW of N. Am. Inc.,* 974 F.2d 1358, 1362-63 (3d Cir. 1992). "More than a mere scintilla of evidence in its favor" must be presented by the non-moving party in order to overcome a summary judgment motion. *Tziatzios v. United States*, 164 F.R.D. 410, 411-12 (E.D. Pa. 1996).  If the court determines that there are no genuine issues of material fact, then summary judgment will be granted. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

**B.     Plaintiff Was Terminated Administratively Months After his FMLA Leave Expired Because He Could Not Return to Work, Not Because He Took FMLA Leave.**

### 1.     FMLA Retaliation – the Legal Standard

To establish a prima facie case of retaliation, plaintiff must show: (1) he took FMLA leave; (2) he suffered an adverse employment action; and (3) there was a casual connection between his leave and the adverse action.  *Atchison v. Sears*, 666 F.Supp.2d 477, 491-496 (E.D. Penn. 2009).

"If a plaintiff establishes a *prima facie* case, a rebuttable presumption arises, and the burden shifts to the employer to articulate a legitimate non-discriminatory reason for the adverse employment action." *Atchison*, 666 F. Supp.2d at 493-94. At this stage in the analysis, "the burden of production (but not the burden of persuasion) shifts to the defendant...." *Id*. The burden on the defendant is "'relatively light'" and the defendant can satisfy this burden by "'introducing evidence which, taken as true, would permit the conclusion that there was a non-discriminatory reason for the unfavorable employment decision.'" Id. at 494.

Once a defendant has introduced evidence of a non-discriminatory reason, to prove pretext, a plaintiff must point to "some evidence, direct or circumstantial, from which a fact finder could reasonably either (1) disbelieve the employer's

articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Atchison*, 666 F. Supp. at 494.

> ### 2.   Plaintiff Cannot Establish a Prima Facie Case Because He Cannot Show He Suffered An Adverse Employment Action

Plaintiff cannot establish a prima facie case of retaliation because he cannot show that his termination was an adverse employment action.  "[A]n employee, who is terminated after the expiration of FMLA leave because the employee is unable to perform the essential functions of the job at the time of termination, has failed to establish the requirement of an adverse employment action for a FMLA retaliation claim." *Gibson v. Lafayette Manor, Inc.*, 2007 WL 951473, *19 (W.D. Penn. 2007).  This Court held:

> Because it is undisputed that Gibson was unable to return to work at the expiration of her FMLA leave, and in fact, could not return to work in any capacity for some time thereafter, she did not suffer an adverse employment action. Stated another way, Gibson has failed to show that her termination was materially adverse, such that it might well have dissuaded a reasonable employee from exercising her rights under the FMLA. Accordingly, the Court finds that Gibson has failed to satisfy her burden of proving a *prima facie* case of retaliation under the FMLA, Therefore, the Court recommends that Lafayette's motion for summary judgment be granted as to the FMLA retaliation claim.

*Gibson* at *19; *Budhun v. Reading Hospital and Medical Center*, 2011 WL 6002024, *6 (November 30, 2011 slip copy, E.D. Penn. 2011) ("Although

termination may, at first glance, appear to be an adverse employment action, Ms.

Budhun was unable to return to work and, therefore, her separation from

employment was not an adverse employment action under the FMLA").

Not only was plaintiff unable to return to work in July 2010 after the

expiration of his FMLA leave, but he also continued to be unable to return to work

for the subsequent four months while he was on extended unpaid leave. *See*

Section II.D and II.E.  Before he was administratively terminated pursuant to the

Six-Month Neutral Termination Policy, Mr. Caine contacted plaintiff to inquire

about his ability to return to work.  It was not until after his doctor provided a letter

on November 2, 2010, stating that plaintiff could not return to work at that time—

or at any time in the foreseeable future—that Mr. Caine decided to terminate his

employment. *See* Section II.F and II.G.  Pursuant to the terms of the policy,

plaintiff was on good standing and invited to apply for reemployment when he

became able to return to work.  He never did.  Thus, because plaintiff has not been

able to return to work, his termination was not an adverse action, and he cannot

establish a prima facie case of retaliation.

**3.**     **Plaintiff Cannot Establish a Prima Facie Case Because He Cannot Show a Causal Connection Between his Termination and His FMLA Leave**

Plaintiff cannot establish a prima facie case of retaliation for the additional reason that he has no evidence that "there was a causal connection between his leave and the adverse action." *Atchison v. Sears*, 666 F.Supp.2d at 491.  Two main factors are relevant in deciding whether there was a causal link between the leave and the adverse employment action: (1) timing or (2) evidence of ongoing antagonism. *Abramson v. William Paterson Coll. Of N.J.*, 260 F.3d 265, 288 (3d Cir. 2001).

Plaintiff does not have *any* evidence of, indeed does not even allege, ongoing antagonism related to his FMLA leave.  He cannot deny that FMLA leave was commonly taken by employees of JELD-WEN.  He cannot deny that four of the eight Maintenance Technicians took FMLA leave in either 2009 or 2010. *See* Section II.B. Plaintiff admits that none of the supervisors involved in the decision to terminate him ever exhibited any antagonism or expressed any negative sentiments regarding his FMLA leave. *See* Section II.A. There is simply no evidence of hostility surrounding FMLA leave to support the prima facie element of causation.

Plaintiff was terminated on November 20, 2010, more than four months after his FMLA leave had ended.  "[W]here there are several months intervening between a plaintiff's leave and her subsequent termination…retaliation cannot be inferred from the timing of the adverse employment action." *Coppa v. American Society for Testing Materials*, 2005 WL 1124180, *2-3 (E.D. Penn 2005) (holding that three months from the end of FMLA leave to termination is "too long a period to establish a causal link"); *Dogmanits v. Capital Blue Cross*, 413 F.Supp.2d 452 (E.D. Penn. 2005) ("a four month gap between FMLA protected activity and termination will not, in itself, establish causation").

Because plaintiff can prove neither temporal proximity nor ongoing antagonism, he has failed to establish the causal link required for a claim of retaliation.

    **4.**    **JELD-WEN has Demonstrated a Legitimate Non-Discriminatory Reason for Terminating Plaintiff's Employment and Plaintiff Cannot Show Pretext**

        **a.**    **JELD-WEN Terminated Plaintiff Pursuant to its Six-Month Neutral Termination Policy**

Even if plaintiff could establish a prima facie case—and he cannot for the reasons described above—his retaliation claim also fails because JELD-WEN has articulated a legitimate reason for his termination and he cannot show that reason is a pretext for retaliation.  Plaintiff was terminated pursuant to JELD-WEN's Six-

Page 22 – MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Month Neutral Termination Policy after seven months of leave and because his

doctor indicated that he would not be able to return to work in the foreseeable

future. *See* Section II F and II.G.  This more than adequately fulfills JELD-WEN's

"relatively light" burden of "introducing evidence which, taken as true, would

permit the conclusion that there was a non-discriminatory reason for the

unfavorable employment decision."  *Atchison*, 666 F.Supp.2d at 494 (finding that

defendant met its "relatively light" burden by providing the Court with sufficient

evidence that Atchison was terminated pursuant to a company-wide RIF).

### b.      Plaintiff Has No Evidence of Pretext

JELD-WEN has articulated its legitimate non-discriminatory reason for

plaintiff's termination, *i.e.*, the application of its Six-Month Neutral Termination

Policy and plaintiff's inability to return to work, or even provide an anticipated

date for return to work. *See* Section II.F and II.G.  Plaintiff has no evidence—and

does not even contend—that this was not a proper application of Company policy.

Plaintiff offers no evidence from which a fact finder could "reasonably

disbelieve the employer's articulated legitimate reasons."  *Atchison*, 666 F. Supp. at

494.  A plaintiff cannot merely show that the employer's decision was wrong or

mistaken. *Id*. Instead, the plaintiff "must demonstrate such weaknesses,

implausibilities, inconsistencies, or contradictions in the employer's proffered

legitimate reasons for its action that a reasonable fact finder could rationally find them 'unworthy of credence'...." *Id*. Plaintiff admits that he had been on leave for seven months and admits that his doctor indicated in response to JELD-WEN's October 2010 letter that she did not anticipate that he would be able to return to work in the near future. *See* Section II.F and II.G. He cannot argue, therefore, that JELD-WEN's explanation that he was terminated based on application of the Six-Month Neutral Termination Policy lacks credence.

Plaintiff has no evidence that an "invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Atchison*, 666 F. Supp.at 494. To establish pretext under this test, "a plaintiff must point to evidence with sufficient probative force that would allow a fact finder to conclude by a preponderance of the evidence that engaging in the protected activity was a motivating or determinative factor in the employment action." Specifically, relevant evidence that should be examined under the test includes:

> (1) whether the employer has previously discriminated against the plaintiff;
> (2) whether the employer has discriminated against other people who engaged in the same protected activity as plaintiff or has discriminated against other people within another protected class; or
> (3) whether the employer has treated more favorably similarly situated persons who did not engage in plaintiff's protected activity.

*Id*. at 495 (citations omitted).  Plaintiff has no evidence that he had been discriminated against previously—in fact, when he took FMLA leave on previous occasions and was able to return to work, he was not terminated. *See* Section II.A. He has no evidence that he was treated differently from any similarly situated employee who did not take FMLA leave.  He cannot show that JELD-WEN has a history of discriminating against people who take FMLA leave. To the contrary, three of his former co-workers in the maintenance department also took FMLA leave in 2009 and 2010 and none of them was terminated. *See* Section II.B.

With no evidence that JELD-WEN's reasons for discharge are pretextual, plaintiff's discriminatory discharge claim fails as a matter of law.

### C.   Plaintiff Cannot Show That JELD-WEN Interfered with his Rights Under the FMLA When His Job Was Eliminated and He Was Reassigned During His FMLA Leave

#### 1.   Prima Facie Case of Interference with the FMLA

To prove the FMLA interference claim alleged in Count One, plaintiff must show that "he was entitled to benefits under the FMLA and that he was denied them." *Sommer v. The Vanguard Group*, 461 F.3d 397, 399 (3d Cir. 2006). Specifically, a plaintiff must show that: (1) he was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the

employer of his intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he was entitled under the FMLA. *Mascioli v. Arby's Rest. Group, Inc.,* 610 F.Supp.2d 419, 429-30 (W.D. Pa. 2009). "An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period." 29 C.F.R. 825.216.  As the Third Circuit has explained, "[a]n interference action is not about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA." *Callison v. City of Philadelphia*, 430 F.3d 117, 119-20 (3d Cir. 2005).

> **2.      Plaintiff Was Not Insulated From Job Elimination By His FMLA Leave**

Plaintiff was not insulated from job elimination by his FMLA leave. An employee's right to FMLA leave is limited by a statutory directive that an employee "has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period." 29 C.F.R. 825.216.   Thus, "if an employee is discharged during or at the end of a protected leave for a reason unrelated to the leave, there is no right to reinstatement." *Yandrisevitz v. H.T. Lyons, Inc*., 2009 WL 2195139, *9 (Slip Copy E.D. Pa. July 22, 2009) (citing 29 U.S.C.A. § 2614(a)(3)(B)).  "[I]f the employee is laid off and terminated while on FMLA leave, the employee has no

right to reinstatement or the right to continue leave." *Mascioli*, 610 F.Supp.2d at 431; *Atchison*, 666 F.Supp.2d at 488-489; *Pellegrino v. Communications Workers of America, AFL-CIO, CLC*, 17 Wage & Hour Cas.2d (BNA) 1169, *5 (Slip Copy W.D. Penn. 2011) ("No employee is entitled to a right, benefit, or position to which the employee would not have been entitled had she not taken FMLA leave. This means that if an employee is discharged during or at the end of a protected leave for a reason unrelated to the leave, then there is no right to reinstatement.") (citations omitted).

Thus, JELD-WEN was not barred from eliminating a maintenance position simply because that position was filled by an employee who happened to be on FMLA leave at the time the decision was made. Plaintiff's supervisors used an objective process—identification of the maintenance technician with the lowest performance rating—to select the person for job elimination. *See* Section II.B. Plaintiff was considered along with his coworkers and his position was selected for elimination since his performance appraisal rating was the lowest. *Id*. His FMLA leave does not exempt him from that process, or protect him from being selected. Just as he would have been the maintenance technician selected for job elimination had he been at work, he was selected despite the fact that he was on leave. This job elimination is not interference with plaintiff's FMLA rights and does not

Page 27 – MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

suffice to state a prima facie case. See *Yandrisevitz*, 2009 WL 2195139, *10

(Granting summary judgment because "[p]laintiff has not come forward with any

evidence that her position would not have been eliminated had she not taken

FMLA leave, or supplied this Court with any evidence other than her own

speculation that her taking FMLA leave had any bearing on her transfer to the

receptionist position and subsequent termination")

### D.    Plaintiff Cannot Show That His Employment Was Terminated While He Was on FMLA Leave

Plaintiff alleges in Count Two ("Family Medical Leave Violation-Unlawful

Termination") that his rights under the FMLA were violated because it is

"unlawful to terminate an employee while on FMLA leave." Complaint ¶21.  As

explained above, to establish a prima facie case for interference, plaintiff must

show that he was entitled to benefits under the FMLA and that he was denied

them.  Plaintiff was on FMLA leave until July 8, 2010.  See Section II.F.  He then

remained on unpaid leave until he was administratively terminated on November

17, 2010.  *See* Section II.G. Plaintiff was unable to return to work at the expiration

of his FMLA leave, or at any time thereafter. *See* Section II.D, II.E and II.F.  When

he was terminated, he was no longer on FMLA leave and had received and

exhausted his full 12 weeks of FMLA leave for the year. *See* Section II.F; 29

C.F.R. 825.313(d) ("Unless the employee provides either a fitness-for-duty

Page 28 – MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

certification or a new medical certification for a serious health condition at the time

FMLA leave is concluded, the employee may be terminated.").  Plaintiff's

termination in no way denied plaintiff benefits under the FMLA.

## V.   CONCLUSION

JELD-WEN respectfully requests that this Court grant summary judgment as

to all of plaintiff's claims.

Dated:       May 10, 2012           BUCHANAN ANGELI ALTSCHUL &
                                    SULLIVAN LLP

                                    s/ Courtney Angeli
                                    Courtney Angeli, OSB No. 941765
                                    Robin Bowerfind, OSB No. 035949
                                    BUCHANAN ANGELI ALTSCHUL &
                                    SULLIVAN LLP
                                    321 SW 4th Avenue, Suite 600
                                    Portland, Oregon 97204
                                    503-974-5015
                                    971-230-0337 (fax)
                                    E-mail:  courtney@baaslaw.com

                                    Marianne J. Gilmartin
                                    STEVENS & LEE, P.C.
                                    425 Spruce Street, Suite 300
                                    Scranton, PA 18503
                                    Telephone:  (570) 969-5362
                                    Facsimile:  (570) 343-1892
                                    E-mail:  mjg@stevenslee.com

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT on the following named person on the date indicated below by:

    **X**    ECF


    Theodore R. Laputka, Jr.
    19 East Broad Street
    Hazleton, PA 18201
    (570) 459-0800
    *salmon@hazleton.net*


Dated:    May 10, 2012        BUCHANAN ANGELI ALTSCHUL & SULLIVAN LLP


        s/Courtney Angeli
        Courtney Angeli, OSB No. 941765
        Robin Bowerfind, OSB No. 035949
        321 SW 4th Avenue, Suite 600
        Portland, Oregon 97204
        503-974-5015
        971-230-0337 (fax)
        E-mail:  courtney@baaslaw.com

        Marianne J. Gilmartin
        STEVENS & LEE, P.C.
        425 Spruce Street, Suite 300
        Scranton, PA 18503
        Telephone:  (570) 969-5362
        Facsimile:  (570) 343-1892
        E-mail:  mjg@stevenslee.com