**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

MATTHEW J. MURRAY,                          :

     **Plaintiff**                                    :

        **v.**                                      :

JELD-WEN, INC.,                             :

     **Defendant**                                 :

**CIVIL ACTION NO. 3:11-0895**

**(JUDGE MANNION)**

# M E M O R A N D U M

Presently before the court are the following motions: (1) the defendant's partial motion for summary judgment on the issue of damages, (Doc. No. 30); (2) the defendant's motion to strike the plaintiff's response to the defendant's concise statement of material facts in support of the partial motion for summary judgment, (Doc. No. 43); (3) the plaintiff's motion for summary judgment on the merits of his claims, (Doc. No. 49); and (4) the defendant's motion for summary judgment on the merits of the plaintiff's claims, (Doc. No. 51).

## I.    PROCEDURAL HISTORY

By way of relevant background, on May 11, 2011, the plaintiff filed the instant action alleging violations by the defendant of the Family and Medical Leave Act, ("FMLA"), 29 U.S.C. §2619. (Doc. No. 1). Specifically, the plaintiff alleges that the defendant failed to provide him with a comparable position

upon return from leave, retaliated against him for taking leave, and terminated his employment while he was on leave. After having been granted an extension of time to do so, (Doc. No. 7), on June 21, 2011, the defendant filed an answer to the plaintiff's complaint, (Doc. No. 8).

On September 7, 2011, the parties consented to have the undersigned conduct all proceedings in this case pursuant to 28 U.S.C. §636(c) and Fed.R.Civ.P. 73[1]. (Doc. No. 17).

On January 18, 2012, the defendant filed a partial motion for summary judgment on the issue of damages, (Doc. No. 30), along with a brief, (Doc. No. 31), and supporting declarations, (Doc. No. 32, Doc. No. 33). On February 7, 2012, the plaintiff filed a brief in opposition to the partial motion for summary judgment. (Doc. No. 34). After having been granted permission to do so, (Doc. No. 36), on February 10, 2007, the defendant filed a previously excluded concise statement of material facts in support of the partial motion for summary judgment, (Doc. No. 37). On February 21, 2012, the defendant filed a reply brief in support of its partial motion for summary judgment, (Doc. No. 38). Subsequently, on February 29, 2012, the plaintiff filed a response to the defendant's concise statement of material facts. (Doc. No. 39).

---

[1]Since the filing of the instant action, the undersigned, formerly a United States Magistrate Judge, has been elevated to the position of United States District Judge. In light of the parties' previous consent to the jurisdiction of the undersigned, the undersigned will continue to preside over this matter through its resolution.

On March 7, 2012, the defendant filed a motion to strike the plaintiff's response to its concise statement of material facts in support of the partial motion for summary judgment, (Doc. No. 40), along with a supporting declaration, (Doc. No. 41). After the motion to strike was challenged by the plaintiff on the basis that the defendant had filed neither a certificate of concurrence nor a supporting brief, (Doc. No. 42), on April 6, 2012, the defendant filed an amended motion to strike, (Doc. No. 43). Accompanying the amended motion was a certificate of concurrence/non-concurrence, which indicated a failed attempt to obtain concurrence from plaintiff's counsel, (Doc. No. 43), as well as a supporting brief. (Doc. No. 44). In addition, the defendant filed a supporting declaration. (Doc. No. 45). On September 24, 2012, the plaintiff filed a brief in opposition to the defendant's amended motion to strike. (Doc. No. 74)[2].

On April 30, 2012, the plaintiff filed a motion for summary judgment on the merits of his claims along with supporting exhibits, (Doc. No. 49), and a brief, (Doc. No. 50). On May 16, 2012, the plaintiff filed a statement of material facts in support of his motion. (Doc. No. 59). The defendant filed a brief in opposition to the plaintiff's motion for summary judgment with

---

[2]The court notes that the plaintiff originally filed what was docketed as an opposing brief on April 26, 2012. (Doc. No. 48). However, when filing this document, the plaintiff apparently scanned the wrong document into the Electronic Filing System. Upon being notified of this by the court, on September 24, 2012, the plaintiff filed the proper brief.

supporting exhibits on June 6, 2012, (Doc. No. 65), as well as a response to the plaintiff's statement of material facts, (Doc. No. 66). The plaintiff filed a reply brief on June 20, 2012. (Doc. No. 69).

In the meantime, the defendant also filed a motion for summary judgment on the merits on April 30, 2012, (Doc. No. 51), along with a statement of material facts and supporting exhibits, (Doc. No. 52). On May 10, 2012, the defendant filed a supporting brief. (Doc. No. 58). The plaintiff filed a response to the defendant's statement of material facts on May 31, 2012, (Doc. No. 63), along with an opposing brief, (Doc. No. 64). The defendant filed a reply brief in support of the motion on June 14, 2012, (Doc. No. 67), along with a declaration, (Doc. No. 68).

Oral argument was held on the pending dispositive motions on January 4, 2013.

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56©.

The Supreme Court has stated that:

> ". . . [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails

4

> to make a showing sufficient to establish the
> existence of an element essential to that party's case,
> and on which that party will bear the burden of proof
> at trial. In such a situation, there can be 'no genuine
> issue as to any material fact,' since a complete failure
> of proof concerning an essential element of the
> nonmoving party's case necessarily renders all other
> facts immaterial. The moving party is 'entitled to
> judgment as a matter of law' because the nonmoving
> party has failed to make a sufficient showing on an
> essential element of her case with respect to which
> she has the burden of proof."

Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. Id. The moving party can discharge that burden by "showing . . . that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Issues of fact are genuine "only if a reasonably jury, considering the evidence presented, could find for the nonmoving party." Childers v. Joseph, 842 F.2d 689, 693-94 (3d Cir. 1988) (citations omitted). Material facts are those which will effect the outcome of the trial under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The court may not weigh the evidence nor make credibility determinations. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998). In determining whether an issue of material fact exists, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the nonmoving party. Id. at 393.

If the moving party meets his initial burden, the opposing party must do more than raise some metaphysical doubt as to material facts, but must show sufficient evidence to support a jury verdict in its favor. Id.

## III.  DISCUSSION

### A.  Defendant's Motion to Strike

Of the pending motions, the court first considers the defendant's amended motion to strike the plaintiff's answers to its statement of facts in support of the partial motion for summary judgment on damages. (Doc. No. 43). In its motion, the defendant asks the court to strike the plaintiff's entire response to its statement of material facts on the basis that, contrary to L.R. 56.1, some of the responding facts are not supported by any record citation, while other of the responses cite to deposition transcripts which were not part of the record when the responsive statement of facts was filed. Upon review, the defendant's motion to strike will be granted in part and denied in part.

In considering the defendant's motion, L.R. 56.1 provides:

> A motion for summary judgment filed pursuant to Fed.R.Civ.P. 56 shall be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried.
> The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement required in the foregoing paragraph, as to which it is contended that there exists a genuine issue to be tried.
> Statements of material facts in support of, or in opposition

> to, a motion shall include references to the parts of the record that support the statements.
>
> All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.

In reviewing the plaintiff's responsive statement of facts, although the plaintiff denies several of the facts set forth by the defendant and provides his own version of the facts, the plaintiff fails to provide any citations to the record in support of these facts. These include the statements responsive to paragraphs 7, 8, 11, 13, and 16 of the defendant's statement of facts. These responsive statements are not in accordance with L.R. 56.1, which is in place for a reason. It is not for the court to search through the record in this case to find support for the plaintiff's purported facts; that burden lies with the plaintiff in responding to the defendant's materials. Therefore, the defendant's motion to strike the responses to these paragraphs will be granted and the defendant's statement of facts set forth in these paragraphs will be deemed admitted.

The defendant also argues that several of the plaintiff's responding paragraphs cite to transcript testimony, which was not before the court at the time that the plaintiff's responsive statement was filed. These responses include paragraphs 4, 9, and 10. Upon review of the record, the cited deposition testimony is now before the court in relation to the other motions for summary judgment which have been filed. In light of the fact that the cited

deposition testimony is now properly before the court, the court will deny the defendant's amended motion to strike these responses. The court will consider these statements to the extent that they are supported by the deposition testimony cited by the plaintiff.

As a final matter on the amended motion to strike, although defendant presents only sixteen numbered paragraphs of material facts, the plaintiff's responsive statement contains two additional paragraphs, paragraphs 17 and 18. Paragraph 17 contains no citation to record support and will be stricken. Paragraph 18 does contain a record citation and will be considered by the court to the extent that it is supported by the cited record.

## B.  Defendant's Partial Motion for Summary Judgment on Damages

With the above ruling on the defendant's amended motion to strike, the court finds the following facts provided by the parties in relation to the partial motion for summary judgment are not in dispute and are supported by the record.

JELD-WEN hired the plaintiff as a maintenance technician at its DoorSystems facility on April 23, 2007. The plaintiff's duties were to repair mechanical equipment, address basic electrical problems, perform preventative maintenance, make plumbing repairs, complete maintenance logs, and maintain precise adjustments on calibrated systems. The plaintiff

worked on the night shift, which was the third of three shifts, reporting to Production Manager John Walter and Maintenance Supervisor Thomas S. Reich.

At the plaintiff's request, JELD-WEN granted plaintiff FMLA leave beginning on April 20, 2010, due to a documented mood disorder[3]. On June 3, 2010, the plaintiff's doctor released him to return to work beginning June 6, 2010. Plaintiff returned to JELD-WEN and worked the third shift on the evening of June 6, 2010.

At the end of his scheduled shift, on the morning of June 7, 2010, Production Manager Charles Zigner notified the plaintiff that a decision had been made while the plaintiff was on FMLA leave to eliminate his third-shift maintenance position. Mr. Zigner indicated that the decision to eliminate the plaintiff's position had been made based on a performance evaluation conducted in March 2010, prior to the commencement of the plaintiff's April FMLA leave. He further indicated that the plaintiff would retain his maintenance technician pay rate for a period of thirty days beginning June 7, 2010. Plaintiff was later informed by Mr. Walter that, during this thirty-day

---

[3]Plaintiff's deposition testimony establishes that he suffers from bipolar manic depression. (Doc. No. 52, Murray Depo., pp. 52-53). In his responsive statement of facts, the plaintiff provides that, prior to this period of leave, he had been granted FMLA leave beginning in October 2009 for one week and in January 2010 for one week. After each of these first two absences, the plaintiff was returned to his previous position.

period, JELD-WEN would place him in an open job for which he was qualified and that he would have the opportunity to bid on any open production position within the plant[4]. This was also reflected in a written explanation given by Mr. Walter to the plaintiff at his request. (See Doc. No. 52, Murray Deposition, Ex. 10).

The plaintiff was paid for his work on the June 6, 2010, shift. On the evening of June 7, 2010, plaintiff called defendant and reported that he could not work his scheduled shift because his health had deteriorated as a result of being told that his position had been eliminated. The plaintiff indicated that he would not return to work until after he had seen his doctor. The plaintiff called off and received sick pay for the next two days.

On June 10, 2010, the plaintiff's physician recommended in writing that he be returned to FMLA leave status beginning on June 10, 2010, and ending on June 22, 2010, due to illness. However, the plaintiff has not been able to return to any type of work at JELD-WEN, or any other employer, since the morning of June 7, 2010. Plaintiff has not made any attempt to find employment since his final day of work at JELD-WEN on June 7, 2010, and

---

[4]Despite the claim made in the plaintiff's responsive statement of facts that three positions opened in the next thirty days and fifteen employees applied for those positions, (Doc. No. 39, ¶10), the deposition testimony to which he cites indicates that, within the thirty days he was to "float," four positions opened at JELD-WEN with fourteen people bidding for those positions. (See Doc. No. 49, Walter Deposition, p. 25).

has not been released to work by his doctors.

With respect to the issue of damages, the FMLA permits an employee

to recover the following damages from an employer who violates the Act:

> (I) any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation; or
> (II) in a case in which wages, salary, employment benefits, or other compensation have not been denied or lost to the employee, any actual monetary losses sustained by the employee as a direct result of the violation, such as the cost of providing care, up to a sum equal to 12 weeks of wages or salary for the employee.

29 U.S.C. §2617(a)(1)(A)(I). In addition, the court may assess liquidated

damages and interest on the damages amount, 29 U.S.C.

§2617(a)(1)(A)(i)–(iii); order reinstatement, 29 U.S.C. §2617(a)(1)(3); and

award attorney's fees, 29 U.S.C. §2617(a)(B).

The defendant argues in its motion for partial summary judgment on

damages that the plaintiff has failed to establish that he suffered any actual

damages based on his FMLA claims. To this extent, the defendant argues

that the record demonstrates that there is not one day during which the

plaintiff could have worked but did not due to an alleged wrongful act by the

defendant. Upon return from his FMLA leave, on June 6, 2010, the plaintiff

engaged in one active day of employment and was thereafter granted two sick

days. The plaintiff was paid for each of these days. The plaintiff then

requested to return to FMLA leave and was permitted to do so. The plaintiff

does not dispute and his deposition testimony supports that, if he were

11

medically cleared to do so, he could have returned to work at JELD-WEN and bid on another position. However, he was never medically able to do so. Since the plaintiff has never attempted to return to work because he has been medically unable to do so, the defendant argues that he has no basis for a claim that he was prejudiced or that he suffered any monetary loss as a result of the elimination of his position.

In response to the defendant's argument that he has failed to establish any actual damages[5], the plaintiff argues that the defendant was aware that he suffered what was characterized as a "documented mood disorder," and while he was on FMLA leave for this disorder, the defendant eliminated his position and informed him of this on the day he was cleared to return to work. The plaintiff claims that the stress caused by the elimination of his position resulted in an exacerbation of his symptoms to the point that he needed to take additional FMLA leave. Ultimately, the plaintiff claims that the defendant's actions resulted in his inability to return to work. But for this exacerbation of his condition caused by the defendant, the plaintiff argues that he presumably

---

[5]The plaintiff has not set forth in his materials the specific damages which he is seeking. At oral argument, counsel represented that the plaintiff would be entitled to front pay in the amount of wages and benefits denied from June through December of 2010, which would be offset by Social Security Disability benefits which he has since received.

could have continued working earning his regular wages and benefits[6]. The plaintiff argues that compensation for the days of work he missed because of the exacerbation of his condition is compensable under the FMLA.

While the Third Circuit has not yet considered the viability of an FMLA claim based upon the exacerbation theory, other courts of appeal have considered and rejected the theory. In Edgar v. JAC Products, Inc., the Sixth Circuit stated that:

> policy and administrability concerns weigh against endorsing the exacerbation theory. The . . . exacerbation theory is especially likely to be invoked in cases where the plaintiff suffers from depression, anxiety, or a similar mental condition. Because the stress inherent in adverse employment decisions will tend to aggravate most forms of mental or emotional instability, the argument that summary judgment is precluded by factual disputes as to whether the actions of the employer worsened the employee's mental state and prevented the employee from resuming his or her position could become standard fare.

443 F.3d 501, 516 (6th Cir. 2006).

Sharing the concerns of the Sixth Circuit, in Breneisen v. Motorola, Inc., the Seventh Circuit held that the exacerbation theory is not a valid theory under the FMLA. In doing so, the court indicated that:

> Since stress can adversely affect many common ailments from which physically infirm employees suffer, granting relief on this basis would contravene the straightforward premise of the FMLA -

---

[6]This is contrary to the plaintiff's deposition testimony in which the plaintiff testified that he could not say whether he would still be able to work if the defendant had not eliminated his position. (Doc. No. 65, Murray Depo., p. 63).

to protect employees from adverse actions by their employers during finite periods when short-term personal or family medical needs require it.

656 F.3d 701, 705 (7th Cir. 2011).

In addition to the above courts of appeal, district courts considering the issue have also refused to allow recovery under an exacerbation theory. See Johnson v. Georgia Television Co., 435 F.Supp.2d 1237, 1240-41 (N.D.Ga. 2006) (holding that plaintiff was not entitled to damages where FMLA retaliation caused her to miss work by exacerbating her fibromyalgia); Harbuck v. Briggs Equip., 2006 WL 2168096, *7 (S.D.Tex. July 31, 2006) (granting summary judgment to employer where plaintiff claimed leg infection was caused by being discouraged from taking FMLA leave); Dawson v. Leewood Nursing Home, Inc., 14 F.Supp.2d 828, 833 (E.D.Va. 1998) (ruling that plaintiff could not recover future wages on a theory that FMLA violation aggravated medical symptoms and caused her to be incapacitated).

For his part, the plaintiff relies on the Ninth Circuit's opinion in Farrell v. Tri-County Metro. Trans., 530 F.3d 1023 (9th Cir. 2008), which held that the FMLA would allow an employee to recover lost wages for absences from work that were caused by an emotional condition which resulted from the employer's wrongful denial of FMLA leave. The Farrell case is factually distinguishable, however, and the holding of the court was geared to the specific findings of fact by a jury. There, the plaintiff repeatedly requested and was denied leave under the FMLA and was thereafter diagnosed with an

14

adjustment disorder, anxiety, and depression. He sued, in part, under the FMLA. The case went to a jury which made specific findings that the employer wrongfully denied one or more of the plaintiff's requests for leave; that the wrongful denials resulted in emotional stress or other mental problems that caused the plaintiff to miss work; and that the plaintiff was entitled to lost wages for the work he missed because of stress or other mental problems caused by the wrongful denials. The plaintiff was awarded $1,100.00 in lost wages based on these findings.

On appeal, the employer admitted that it violated the FMLA by denying one or more of the plaintiff's requests for leave and did not challenge that its denials caused the plaintiff to experience emotional distress. The employer argued, however, that Congress did not intend the FMLA to permit recovery of consequential or emotional distress damages which the defendant argued was what the plaintiff received when the jury awarded him damages for time loss induced by emotional distress.

While the Ninth Circuit acknowledged that recovery for emotional distress is not available under the FMLA, it found that the damages awarded by the jury in that case were not awarded for emotional distress, but "for days of work that [the plaintiff] missed because of stress or other mental problems resulting from the wrongful denial of FMLA leave." Id. at 1025. Even so, in allowing the jury award to stand, the Ninth Circuit noted in its discussion the finding by the jury of a direct causal relationship between the FMLA violations

and the condition suffered by the plaintiff which caused the days of work missed.

Here, the court finds persuasive the reasoning of the majority of courts which have considered the issue and found that the exacerbation theory is not viable under the FMLA, as neither the FMLA nor related regulations concern themselves with the cause of injury. Moreover, even the court in Farrell eluded to the need for a causal relationship between the FMLA violation and the condition suffered which resulted in days of work missed. The plaintiff in the instant action has pointed to no evidence which would establish a causal connection between the actions of the defendant in eliminating his position and his need to resume FMLA leave. In fact, the record establishes that the plaintiff's disorder is one which he has suffered over a period of time and which required him to take leave on three separate prior occasions. At oral argument, counsel attempted to establish a connection between the actions of defendant and the plaintiff's medical condition by referencing a letter from the plaintiff's physician which indicated that she was "outraged" by the actions of the defendant and which suggested to the plaintiff that he obtain legal counsel. However, this in no way constitutes a medical opinion establishing a causal connection between the defendant's actions and the claimed exacerbation of the plaintiff's condition[7].

---

[7]At oral argument, counsel for the plaintiff indicated that although there
(continued...)

Finally, in opposing the defendant's motion for partial summary judgment on the issue of damages, the plaintiff relies upon the declaration of Jennifer Palmer, which has attached to it a copy of the plaintiff's pay stub from the week in June when he returned to work from FMLA leave. The plaintiff argues that this pay stub demonstrates that he was receiving wages and holiday pay, he had a 401(k), accidental death benefits, long-term disability benefits, and life insurance benefits. While the plaintiff is correct that this demonstrates that he was receiving such benefits, without more, citing to a pay stub is insufficient to establish that he suffered actual damages under the FMLA which would entitle him to compensation for such benefits.

In light of the above, even viewing the facts in a light most favorable to the plaintiff, the court finds that the plaintiff has failed to establish that the has suffered any actual damages as a result of the actions taken by the defendant

---

[7](...continued)
is no evidence in the current record establishing a causal relationship between the defendant's actions and the exacerbation of the plaintiff's condition, the medical record was still open in light of the court's order extending the time for the parties to submit expert reports until after consideration of the motion for partial summary judgment on damages. Although the court had previously extended the deadline for the submission of expert reports until after a decision on the motion for partial summary judgment on the issue of damages, (Doc. No. 47), this does not obviate the need for the plaintiff to present evidence to support his response to the defendant's motion and to establish that a material issue of fact exists which would preclude summary judgment in favor of the defendant on the issue of damages.

in eliminating his position. Therefore, the court finds that the defendant is entitled to summary judgment with respect to the issue of damages.

### C.    The Parties' Cross Motions for Summary Judgment on the Merits

Even had the court denied the defendant's partial motion for summary judgment on the issue of damages, the court has before it the parties' cross-motions for summary judgment on the merits of the plaintiff's claims which, upon review, the court finds the defendant is entitled to judgment as a matter of law.

However, prior to considering the arguments raised in these motions, the court notes that the FMLA contains two distinct provisions. Callison v. City of Philadelphia, 430 F.3d 117, 119 (3d Cir. 2005). Under the first provision, it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the FMLA. 29 U.S.C. §2615(a)(1). A claim arising under this provision is referred to as an "interference" claim. Callison, 430 F.3d at 119. Under the second provision, it is "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the FMLA. 29 U.S.C. §2615(a)(2). A claim under the second provision is referred to as a "retaliation" or a "discrimination" claim. Callison, 430 F.3d at 119. Each provision carries its own requirements for satisfaction of the claim.

The plaintiff's complaint contains three counts. In the first, labeled "Family Medical Leave - Violation - Interference," the plaintiff clearly alleges an interference claim, in that he alleges that the defendant violated the FMLA "so as to interfere with Plaintiff's rights under the Act by failing to provide him with a comparable position upon return of his leave under FMLA and by terminating him."

Looking forward, in Count Three of his complaint labeled "Family Medical Leave Violation - Retaliation," the plaintiff alleges that plaintiff "is protected by the FMLA, 29 U.S.C. §2601-2654, which makes it unlawful to retaliate against an employee by terminating them." This claim falls under the second retaliation or discrimination provision of the FMLA.

However, in Count Two of the complaint labeled "Family Medical Leave Violation - Unlawful Termination," the plaintiff simply alleges that he is "protected by the FMLA, 29 U.S.C. §2601-2654, which makes it unlawful to terminate an employee while on FMLA leave, under the Act." At oral argument, the plaintiff's counsel conceded that the claim made in Count Two would be subsumed under either Count One or Count Three, presumably Count Three, and that Count Two is not an independent claim. Therefore, in considering the parties' cross motions for summary judgment on the merits, the court will not consider Count Two of the plaintiff's complaint as a separate, substantive claim.

That being said, in addition to the facts set forth above in relation to the

defendant's partial motion for summary judgment on damages, the court finds the following facts submitted by the parties in relation to their cross motions for summary judgment on the merits are not in dispute and are supported by the record.

During the three-year period prior to March 24, 2010, Mr. Reich, the Maintenance Supervisor, had not completed any evaluations of the maintenance staff personnel. On March 24, 2010, Mr. Reich began the evaluation process of the maintenance staff beginning with the plaintiff. Although the evaluation form indicates that the form should be filled out by the employee prior to the evaluation, Mr. Reich testified that he did not use the form as a self-evaluation tool, but simply did a basic assessment of the employee. (Doc. No. 65, Reich Deposition, p. 10). The plaintiff's evaluation was completed first, with Mr. Reich printing the form and handwriting his comments and signing the evaluation. Mr. Reich assessed the plaintiff with an overall score of two out of five, or "minimal performance." All of the remaining evaluations were completed on April 6, 2010, two weeks after the plaintiff's evaluation, and were completely typewritten, including Mr. Reich's signature. All other evaluated employees received an overall score of four out of five, or "above average performance.[8]" Mr. Reich was aware that the

---

[8]The plaintiff argues that all of the other evaluations were "identical." However, upon review, while the overall scores were identical, the individual (continued...)

plaintiff had previously taken FMLA leave. Mr. Reich had no training on the requirements of FMLA leave.

At all relevant times, John Caine was the General Manager of the plant where the plaintiff worked. In late April or early May of 2010[9], while the plaintiff was out on FMLA leave, Mr. Caine decided to eliminate one position from the maintenance department. Mr. Caine testified at his deposition that maintenance needs were becoming less focused on fabrication and reactive maintenance and more focused on preventative measures. He testified, therefore, that the facility could cut costs by operating with fewer maintenance labor hours.

While the plaintiff was out on FMLA leave, Mr. Caine suggested that the production managers, Mr. Walter and Mr. Zigner, consider which position from the maintenance department should be eliminated. Mr. Reich, who completed the performance evaluations, was not involved in the decision of which position to eliminate. At the time the recommendation was made to eliminate the plaintiff's position, Mr. Zigner and Mr. Walter were aware that the plaintiff

---

[8](...continued)
factors considered in arriving at the overall scores were not.

[9]Defendant disputes the plaintiff's statement that the decision to eliminate his position occurred "in the first half of 2010." However, Mr. Caine specifically testified that the decision was made in the first half of 2010, (Doc. No. 65, Caine Deposition, p. 20), and Mr. Walter testified that decision occurred in late April or early May 2010, which is clearly in the first half of 2010. (Doc. No. 65, Walter Deposition, p. 8).

was out on FMLA leave. Although Mr. Zigner had not "gone to any schooling or any type of seminars on personnel matters, specifically FMLA matters," he consulted with JELD-WEN's legal department prior to recommending the elimination of plaintiff's position.

On June 7, 2010, Mr. Caine signed an Employee Change Notice documenting that the plaintiff had returned to work, and on June 9, 2010, Mr. Caine signed an Employee Change Notice documenting that the plaintiff's job had been eliminated[10]. At the time he signed these documents, Mr. Caine was aware that the plaintiff had been out for several weeks on FMLA leave. Mr. Caine was also aware that the plaintiff had previously taken FMLA leave. Mr. Caine testified that he did not have any training on the requirements of the FMLA and did not seek any guidance from Human Resources concerning the termination of an employee while on protected FMLA leave[11].

As indicated above, on June 7, 2010, Mr. Zigner informed the plaintiff that the decision had been made during his absence to eliminate his position. The plaintiff was informed that his position was selected for elimination

---

[10]According to the defendant's materials, this was the date on which the plaintiff's position was "officially eliminated." (Doc. No. 66, ¶12).

[11]Defendant qualifies this fact by stating that an individual in the Pottsville office handled any paperwork related to FMLA leave, and that, while Mr. Caine did not do so, Mr. Zigner had conferred with the JELD-WEN corporate legal department to ensure that they had selected a fair method by which to eliminate the position. (Doc. No. 65, Zigner Deposition, pp. 7-8).

because his performance review rating prepared by Mr. Reich, which took place prior to the commencement of his April 2010 FMLA leave, was the lowest of the maintenance technicians. The plaintiff was further informed that he would retain his maintenance pay rate for thirty days beginning on June 7, 2010, and that he could bid on any production position which opened within the thirty-day period[12]. Although the plaintiff was given thirty days to bid on any production position in the plant which became open, the other production positions in the plant were all lower paying positions than the maintenance positions. Therefore, the plaintiff would had to have bid down to a lower paying position.

The record reflects that three other maintenance employees who had previously taken FMLA leave like the plaintiff, had scored higher on the employee evaluations and were not considered for the position elimination. (Doc. No. 65, Palmer Decl, ¶7; Walter Decl. ¶7).

Other than a comment made to him by Mr. Reich while he was out on FMLA leave that the plant had a lot of work and could use the plaintiff, (Doc. No. 65, Murray Depo., pp. 22-24), the plaintiff admits that neither Mr. Reich, Mr. Walter, Mr. Zigner, nor Mr. Caine ever made a negative comment to him about taking FMLA leave or expressed any antagonism toward him in relation

---

[12]As previously indicated other positions did become available in the six weeks after the plaintiff's position was eliminated to which the plaintiff could have applied, but did not, because he was medically unable to do so.

to his taking leave[13].

In July 2010, after the plaintiff's maintenance position had just recently been eliminated on the basis that the maintenance department was overstaffed, Mr. Caine created a Preventative Maintenance Technician position which was filled by another individual. The record reflects that the other individual, Matt Malinowski, had also utilized FMLA leave. In fact, Mr. Malinowski exhausted his twelve week FMLA leave and was then placed on extended unpaid leave. Shortly after his clearance to return to work, Mr. Malinowski bid on and received the preventative maintenance position. Although the defendant's materials indicate that the newly created position was different than the plaintiff's position, the defendant concedes that the plaintiff could have performed this position.

On October 20, 2010, after the plaintiff's position had been eliminated and he was back out on medical leave for some time, Mr. Caine wrote a letter to the plaintiff informing him of his potential termination under JELD-WEN's Six-Month Neutral Termination Policy and informed him that he may be eligible for an extension of the six months depending upon the progress of his recovery and the anticipated duration of his leave. Mr. Caine requested medical documentation regarding the plaintiff's need for additional leave and

---

[13]At oral argument, counsel again conceded that there was no animus whatsoever expressed toward the plaintiff by any individual at JELD-WEN because the plaintiff took leave under the FMLA.

his intention to return to work.

Subsequently, by correspondence dated November 2, 2010, the plaintiff's physician, Dr. Pamela Lieb, indicated that she did not anticipate any improvement in the plaintiff's condition and that there was no date certain as to when he could return to work.

By correspondence dated November 17, 2010, the plaintiff was informed that he was "administratively separated" from employment under JELD-WEN's Six-Month Neutral Termination Policy, that he was still in good standing with JELD-WEN, and that he could apply for rehire whenever he was able to return to work[14].

On these facts, the parties have brought cross-motions for summary judgment on the merits of the plaintiff's claims. In Count One of his complaint,

---

[14]The plaintiff denies that he was in good standing with the company and eligible for rehire "given that Defendant's employees, and attorneys, were afraid to be in the same building as the plaintiff." (Doc. No. 63, ¶23). In making this statement, plaintiff cites to the deposition transcript of Mr. Caine. Upon review, the transcript page cited to by the plaintiff contains a statement from plaintiff's counsel which indicates that he had spoken to his client, who indicated that "he was highly medicated and that he was on edge and he was afraid that he would react and/or become explosive during [Mr. Caine's] testimony." Plaintiff's counsel indicated that he communicated this to defendant's counsel and that they had "discussed possible alternatives, one of which was maybe to talk to [plaintiff] not to appear and not to be present." As a result, plaintiff's counsel spoke with the plaintiff and he agreed not to attend Mr. Caine's deposition. (Doc. No. 49, Caine Deposition, p. 31). This discussion, however, is not indicative of the plaintiff's standing with the company at the time of his termination.

the plaintiff alleges that the defendant interfered with his rights under the FMLA by failing to provide him with a comparable position upon return of his leave under the FMLA.

Under the FMLA, an employee is entitled to twelve weeks of leave during any twelve-month period "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. §2612(a)(1)(D). To assert an interference claim under the FMLA, it is the plaintiff's burden to establish that he was entitled to a benefit under the FMLA, but was denied that entitlement. Callison, 2004 WL 765479, at *4; Parker v. Hahnemann Univ. Hosp., 234 F.Supp.2d 478, 485 (D.N.J. 2002). Eligible employees are entitled under the FMLA to reinstatement at the end of the leave to the position they held prior to taking leave or to an equivalent position[15]. Hahnemann, 234 F.Supp.2d at 489. However, the right to reinstatement is not absolute. The right to reinstatement does not entitle an employee to any right, benefit, or position to which he would not "have been entitled had the employee not taken the leave." 29 U.S.C. §2614(a)(3)(b). "If an employee is discharged during or at the end of a protected leave for a reason unrelated to the leave, there is no right to

---

[15]"An equivalent position is one that is virtually identical to the employee's former position in terms of pay, benefits and working conditions, including privileges, perquisites and status. It must involve the same or substantially similar duties and responsibilities, which must entail substantially equivalent skill, effort, responsibility, and authority." 29 C.F.R. §825.215(a).

reinstatement." Conoshenti v. Public Serv. Elec. & Gas Co., 264 F.3d 135, 141 (3d Cir. 2004). As there is no absolute right to reinstatement, whether an employer violates the FMLA depends upon why the employee was not reinstated. See Bearley v. Friendly Ice Cream Corp., 322 F.Supp.2d 563, 572 (M.D.Pa. 2004) (citing Kohls v. Beverly Enterprises Wisconsin, Inc., 259 F.3d 799, 805 (7th Cir. 2001)). As such, where a plaintiff meets his burden of establishing that he was entitled to a benefit under the FMLA to which he was denied, the defendant is then required to demonstrate that the plaintiff would have been denied that benefit even if he had not taken FMLA leave. Id.

Here, there is no dispute that the plaintiff was entitled to take leave under the FMLA and was granted that leave. The plaintiff alleges, however, that when he returned from leave he was informed that his position had been eliminated. As set forth above, upon return from leave, the plaintiff was entitled to be returned to the position he held before taking the leave or to an equivalent position. See 29 U.S.C. §2615(a)(1). The plaintiff has met his burden of establishing that, upon his return from FMLA leave, he was not reinstated to his position or to an equivalent position. In fact, the plaintiff was notified that his position was eliminated and, although he would be permitted to stay at his pay grade for thirty days, thereafter he would need to bid on any open positions. Any position upon which the plaintiff could have bid would have been a lower paying position.

That being said, the burden shifts to the defendant to establish that the

plaintiff would not have been returned to his position even if he had not taken FMLA leave. The defendant has presented evidence that the maintenance department was being downsized in light of the changing needs of the company. The determination as to which maintenance position would be eliminated was based upon performance evaluations. The defendant's materials establish that the plaintiff scored the lowest on these evaluations and, therefore, it was his position which was to be eliminated irrespective of the fact that he had taken FMLA leave. Indicative of the fact that the defendant's decision was not based upon the plaintiff's use of FMLA leave is the evidence that three other maintenance workers utilized FMLA leave, as had the plaintiff, but scored higher on the employee evaluations and were not considered for the position elimination. In addition, the record reflects that the individual who was placed in the preventative maintenance position which was created after the plaintiff's maintenance position was eliminated had fully exhausted his twelve weeks of FMLA leave and, in addition, utilized extended medical leave.

Although the plaintiff takes issue with the manner in which the evaluations were conducted, other than his thoughts as to the lack of objectiveness of the process, there is nothing in the record to indicate that there was anything amiss with the manner in which the evaluations were conducted. Initially, the plaintiff takes issue with the fact that Mr. Reich completed his evaluation first and two weeks prior to the others being

completed. However, nothing in the record connects Mr. Reich's decision to complete the plaintiff's evaluation first, or the span of time within which it took Mr. Reich to complete the evaluations, with the decision by Mr. Zigner and Mr. Walter to eliminate his position, a decision which Mr. Reich had nothing to do with.

The plaintiff also takes issue with the fact that his evaluation was handwritten, while the other evaluations were typewritten. The record reflects here that when Mr. Reich began preparing the evaluations he was unaware that they could be completed through the computer system. Mr. Reich was made aware of the computerized version of the evaluation forms and proceeded to complete the remainder of the evaluations on those forms. Again, there is nothing to indicate that Mr. Reich's decision to take advantage of the ability to complete the evaluations on the computer versus handwriting each evaluation was based upon some predisposition to eliminating the plaintiff's position because he utilized his right to take FMLA leave.

In considering the record as a whole, and even viewing the facts in a light most favorable to the plaintiff, the evidence supports the defendant's position that the plaintiff's position was going to be eliminated irrespective of whether or not he took FMLA leave. The decision to eliminate the plaintiff's position was based upon an objective evaluation process of which the plaintiff scored the lowest and, therefore, his position was eliminated. Given this, the defendant's motion for summary judgment will be granted and the plaintiff's

motion denied with respect to the interference claim.

With respect to the plaintiff's retaliation claim, the practice of the courts is to view FMLA retaliation claims through the lens of employment discrimination law. Lichtenstein v. University of Pittsburgh Medical Center, ___ F.3d ___, 2012 WL 3140350, *6 (3d Cir. 2012) (citing Erdman v. Nationwide Ins. Co., 582 F.3d 500, 508–09 (3d Cir. 2009)). As such, FMLA claims based on circumstantial evidence are assessed under the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Id.

Under the McDonnell Douglas framework, the plaintiff has the initial burden of establishing a *prima facie* case. To do so, he must point to evidence in the record sufficient to create a genuine factual dispute about each of the three elements of his retaliation claim: (1) that he invoked his right to FMLA-qualifying leave, (2) he suffered an adverse employment decision, and (3) the adverse action was causally related to his invocation of right. See Erdman, 582 F.3d at 508–09. If the plaintiff can do so, the burden of production shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for its decision. McDonnell Douglas, 411 U.S. at 802. If the defendant meets this minimal burden, the burden shifts back to the plaintiff to establish that the defendant's reason is pretextual. In order to meet this burden, the plaintiff must either discredit the defendant's proffered reasons, either circumstantially or directly, or adduce evidence, whether

circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action. [Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994)](url).

In considering the plaintiff's initial *prima facie* case, the court finds that the plaintiff has established that he invoked his right to FMLA leave. The plaintiff had initially taken a short period of FMLA leave in October 2009. He again took a short period of FMLA leave in January 2010. The plaintiff was on his third period of FMLA leave at the relevant time in April 2010.

He has also established, despite the defendant's argument to the contrary, that he suffered an adverse employment action. To this extent, when he returned from leave, he was told that his maintenance position was eliminated; he would have to bid on another position; any position upon which he could bid would be a lower paying position; and there was no guarantee that he would actually obtain the position. Thus, the best case scenario would have been that the plaintiff would have bid upon and received a lower paying position. The court finds that this constitutes an adverse employment action.

However, the court finds that the plaintiff has not met the final *prima facie* factor, which is to establish a causal connection between the taking of FMLA leave and the adverse employment action. In considering whether there was a causal link between the FMLA leave taken and the adverse employment action, the parties agree that the two main factors are: (1) the timing of the leave and the subsequent adverse action and (2) evidence of

ongoing antagonism. The plaintiff's counsel conceded at oral argument that timing alone is not sufficient to establish a causal connection. In addition, both in his materials and at oral argument, plaintiff's counsel conceded that there was no outward antagonism expressed toward the plaintiff for his taking FMLA leave. The plaintiff argues, however, that other factors, including the manner in which the evaluation process was conducted and the fact that less than one month after the plaintiff's position was eliminated another maintenance position was created is sufficient to establish a question of material fact on the issue of causation. The court does not agree. As discussed above, the plaintiff has produced nothing to indicate that the evaluation process was anything but an objective procedure by which the managers would determine which maintenance position would be eliminated.

Moreover, although the creation of a new maintenance position less than one month after the elimination of the plaintiff's maintenance position would at first blush seem questionable, upon further delving into the record the circumstances do not support the plaintiff's claim of a causal link. To this extent, the defendant's materials establish that the individual who was placed in the maintenance position had actually utilized more FMLA leave than the plaintiff had. To this extent, he exhausted his twelve weeks of FMLA leave and had taken an additional extended period of unpaid medical leave. Subsequent to his return from this medical leave, he applied for and was placed in the newly created maintenance position. The overall picture of the

defendant providing positive evaluations for and promoting individuals who had taken just as much, if not more, FMLA leave than the plaintiff dispels his theory that the defendant must have eliminated his position because he took FMLA leave.

In light of the above, the court finds that the plaintiff has failed to meet his burden of establishing a *prima facie* retaliation claim under the FMLA. As such, summary judgment will be entered in favor of the defendant and against the plaintiff on the FMLA retaliation claim.


## IV.   CONCLUSION

On the basis of the foregoing, an appropriate order shall issue.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**


**DATE: February 6, 2013**

O:\Mannion\shared\MEMORANDA - DJ\2011MEMORANDA\11-0895-01.wpd

33